IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 01-cv-02089-MSK-CBS

DEAN A. BRAMLET, M.D.,

    Plaintiff,

v.

ASPEN VALLEY HOSPITAL DISTRICT,

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING
## MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on the Defendant's Motion for Summary Judgment **(#171)**. Having considered the motion, the response **(#188)**, the reply **(#199)**, and the documentary evidence attached thereto, the Court finds and concludes as follows.

### I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

### II. Issue Presented

The Plaintiff, Dr. Bramlet, claims that the Defendant, Aspen Valley Hospital District ("the Hospital"), refused to grant him active or consulting staff privileges, a contract to work as a cardiologist, and a practice loan for his private practice. Based thereon, he asserts three claims: (1) the Hospital discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; (2) the Hospital deprived him of his rights to substantive and procedural due process; and (3) the Hospital breached its

agreement with Dr. Bramlet as set forth in the Medical Staff Bylaws and Credentials Policy and Procedure Manual. The Hospital seeks summary judgment dismissing all three claims. The Court must determine whether a trial is required on any of these claims.

### III. Material Facts

The following are the material undisputed facts, or disputed facts construed most favorably to Dr. Bramlet, with regard to his ability to assert an ADEA claim.[1]

1. Dr. Bramlet is a cardiologist.

2. The Hospital is located in Aspen, Colorado. It granted Dr. Bramlet provisional staff privileges to work in the Department of Internal Medicine starting in November 1998.

3. Dr. Bramlet applied for consulting staff privileges and to work as a cardiologist at the Hospital, but the Hospital rejected his applications in 2000.

4. The Hospital instead hired Dr. Gordon Gerson to work as a cardiologist in the Hospital's internal medicine department.

5. The parties agree that if Dr. Bramlet had been hired, his relationship with the Hospital would have been identical to that enjoyed by Dr. Gerson. According to Dr. Gerson, cardiology is a specialty within the medical profession which requires extensive education, training and skill. He also states that cardiologists work without supervision and make decisions about patient care based solely upon their independent, professional medical judgment and the best interests of their patients.

---

[1]Because the Court concludes that a trial is required on the ADEA claim and the evidence relative thereto is substantially the same, and to some degree exceeds that relevant to the other claims, it is not necessary to address the facts pertinent to the remaining claims.

6.      Dr. Gerson had a written contract with the Hospital expressly providing that he would work as an independent contractor. Some aspects of his relationship with the Hospital were specified in the contract; others grew out of their course of conduct. Dr. Gerson was paid for each professional service he performed, rather than by the number of hours he worked. However, he was also entitled to a base pay and to a share of profits generated by the work he performed. The Hospital did not withhold taxes or pay social security taxes for Dr. Gerson. Dr. Gerson obtained and paid for his own professional liability insurance. He received no retirement benefits, medical insurance benefits, or other employee benefits from the Hospital.

The Hospital provided Dr. Gerson with a fully-equipped patient care facility and clinic facilities, as well as clinical and support staff and any necessary supplies, but he was also permitted to see patients outside of the Hospital. Dr. Gerson was obligated "to take a specified portion of emergency room call" and to offer clinic services "four half-days per week," but the Hospital could not assign Dr. Gerson any additional work without his consent. Dr. Gerson was obligated to complete test interpretive services within 24 hours, and was "on-call" four weekdays per week, six weeknights per month, and two 24-hour weekend days every other weekend. He was allowed six weeks of "paid vacation" each year. He was prohibited from "engag[ing] in any contractual arrangements with third-party payors" without obtaining approval from the Hospital.

7.      According to Dr. Gerson, the Hospital did not control his day-to-day schedule but, according to Mark Randall Middlebrook, the Hospital's CEO, there were specific times and hours that Dr. Gerson had to be available.

8.      In her affidavit, Melinda Sandgren, a former Hospital employee who worked as the Cardiology Office Manager, states that she considered Dr. Gerson to be her direct supervisor.

3

She further states that Dr. Gerson participated in interviewing potential Hospital employees and made the ultimate decision as to whether such individuals should be hired.[2]

### IV.  Standard of Review

Determination of claims or defenses on their merits without a trial is governed by Rule 56 of the Federal Rules of Civil Procedure, which facilitates the entry of a judgment if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Rule 56 authorizes summary adjudication when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law determines the material facts and issues.  It specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(e).

---

[2] The Hospital contends that the Court should ignore Ms. Sandgren's affidavit "because it lacks foundation, is not based on personal knowledge, is hearsay, is irrelevant, and is more prejudicial than probative."  The Court rejects such contention.  Ms. Sandgren avers that her statements are based upon personal knowledge.  On their face, her observations and perceptions regarding Dr. Gerson's role and what he did in his work at the Hospital do not contain hearsay and are relevant.

Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence for a reasonable jury to find in favor of the non-movant on the claim or defense that the non-movant is obligated to prove.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### V.  Analysis

The Hospital challenges Dr. Bramlet's entitlement to relief under the ADEA.  It contends that Dr. Bramlet cannot establish that he was denied an "employment relationship" with the Hospital and therefore has no viable ADEA claim. In specific, the Hospital contends that had Dr. Bramlet been hired, he would have been an independent contractor, rather than employee of the Hospital.

For an ADEA claim to be cognizable, a plaintiff must establish that he was employed or denied an "employment relationship".  *See* 29 U.S.C. §§ 623(a), 630(b) & (f).  Independent contractors are not eligible for ADEA relief.  *Oestman v. National Farmers Union Ins. Co.*, 958 F.2d 303, 305-06 (10th Cir. 1992).  The parties stipulate had Dr. Bramlet been hired his relationship with the Hospital would have had been identical to that of Dr. Gerson. Therefore, the Court must determine whether Dr. Gerson was the Hospital's employee or an independent

contractor.[3]

For purposes of ADEA analysis, an employment relationship exists when an employer has the right to control the means and manner of a worker's performance. *See Oestman*, 958 F.2d at 305. To evaluate whether such control exists, a court considers a number of non-exclusive factors including: (1) the kind of occupation at issue, including whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the occupation; (3) who furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) whether the worker is paid by the number of hours worked or by job; (6) the manner in which the work relationship is terminated; (7) whether the worker accrues annual leave; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accrues other benefits, such as retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties. *See id.* No single factor is conclusive; this Court considers the totality of the circumstances in determining the nature of any employment relationship. *See Lambertsen v. Utah Dept. of Corrections*, 79 F.3d 1024, 1028 (10th Cir. 1996).

Some facts in the record support the conclusion that the relationship between Dr. Gerson and the Hospital is an employment relationship. For example, the Hospital provided Dr. Gerson's place of work, all equipment and supplies, any staff, and base compensation. He accrued six weeks of paid annual leave. He was required to work a specific number of shifts within a particular timeframe and to be on call every other weekend. Dr. Gerson was not allowed to enter

---

[3] The Court does not speculate as to what incidental effect such determination may have upon the Hospital or Dr. Gerson.

contracts with third-party payors without the Hospital's consent. In its contract with Dr. Gerson, the Hospital apparently recognizes that cardiology services are an integral part of the Hospital's services to the public. There are factual disputes as to whether Dr. Gerson was required to work specific hours or shifts and whether Dr. Gerson acted as a supervisor of Hospital employees and made hiring decisions on its behalf. At this juncture, the Court must resolve such factual disputes in favor of Dr. Bramlet.

Other facts support the conclusion that Dr. Gerson is an independent contractor. His contract with the Hospital expressly states that he is an independent contractor. Because he is a cardiologist – a profession requiring specialized training – he believes that the Hospital could not supervise his work. The Hospital could not assign him work without his consent. He paid all taxes, obtained professional liability insurance, and received no retirement benefits from the Hospital. The Hospital paid him for each service he performed, rather than based upon the number of hours he worked.

Whether these factors suggest the existence of an employment relationship is a close call which should be made after consideration of evidence submitted at trial. At this juncture with all evidence construed most favorably to Dr. Bramlet, the Court finds that he has made a *prima facie* showing of an employment relationship entitling him to take his ADEA claim to trial. However, at trial, the Hospital may renew its request pursuant to Fed.R.Civ.P. 50. In such event, the Court will consider the actual evidence presented to determine whether Dr. Bramlet has established that the position he was denied was an "employment relationship".

The Hospital does not otherwise challenge Dr. Bramlet's ability to present a *prima facie* ADEA claim. Because Dr. Bramlet's remaining claims arise from the same facts as the ADEA

claim, ( *i.e.*, the Hospital's decisions not to grant privileges or a contract to Dr. Bramlet, and to deny him a practice loan), whether the Hospital is entitled to judgment as a matter of law is best assessed based upon the evidence presented at trial.

**IT IS THEREFORE ORDERED** that the Hospital's Motion for Summary Judgment **(#171)** is **DENIED**.

Dated this 24th day of February, 2006

**BY THE COURT:**

Marcia S. Krieger
United States District Judge